FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 10 2011 ★
BROOKLYN OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PEGGYANN CALLANAN,

                Plaintiff,

-against-

MICHAEL J. ASTRUE, *Commissioner of Social Security*,

                Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-CV-1717 (NGG) (ALC)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Peggyann Callanan ("Callanan") brings this action under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the Social Security Administration's ("SSA's") denial of her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ("Compl." (Docket Entry # 1).) The Commissioner moves and Callanan cross-moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ("Def.'s Mem." (Docket Entry # 15); "Pl.'s Mem." (Docket Entry # 13).) As set forth below, the court grants the Commissioner's motion and denies Callanan's motion.

## I. STANDARD OF REVIEW

### A. Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The standard of review under a Rule 12(c) motion is the same standard applied under a Rule 12(b)(6) motion. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive a Rule 12(b)(6) motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A court is

1

required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B. Administrative Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "Legal error" consists of incorrect determinations on points of statutory or regulatory law made by the Commissioner. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). In assessing a legal determination made by the Commissioner, "[the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal." Id.

## II. BACKGROUND

Callanan was born on May 13, 1961. (Administrative Transcript ("Tr.") (Docket Entry # 17) at 143.) On April 10, 2007, Callanan filed a claim for DIB and SSI alleging disability due

2

to depression and anxiety. (Id. at 143, 151.) The Commissioner denied her claim, and Callanan requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at 82-83.) On November 20, 2008, ALJ Jeffrey M. Jordan held a hearing regarding Callanan's claim. (Id. at 27-73.) On March 2, 2009, the ALJ issued an unfavorable decision. (Id. at 13-26.) Callanan then sought review before the SSA Appeals Council, which denied her request on September 24, 2009. (Id. at 2-6.) By operation of 42 U.S.C. § 405(g), this became the final judgment of the Commissioner. On March 9, 2010, the Commissioner granted Callanan additional time to file a civil complaint in this court challenging his decision. (Def.'s Mem. at 2.) Callanan then filed her Complaint on April 19, 2010. (Compl.)

## III. DISCUSSION

### A. Standard of Review for Determining Disability

To determine whether a claimant is entitled to SSI or DIB, an ALJ utilizes a five-step analysis, as set forth in 20 C.F.R. § 404.1520(a)(4). The Second Circuit, in Dixon v. Shalala, described this five-step analysis:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If

3

the residual functional capacity is consistent with prior employment, benefits are denied.

If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

54 F.3d 1019, 1022 (2d Cir. 1995).

### B. The ALJ's Decision

Under step one of the analysis, the ALJ found that Callanan did not engage in substantial gainful activity during the disability period. (Tr. at 18-19.) Under step two, the ALJ found that Callanan suffered from major depressive disorder and anxiety related disorder. (Id. at 19.) Under step three, the ALJ found that Callanan did not suffer from an impairment that met or exceeded the Listing of Impairments. (Id. at 19-20.) The parties do not contest these findings.

Under step four, the ALJ found that Callanan possessed the residual functional capacity to "perform light work . . . limited to simple, routine, low-stress tasks involving minimal contact with supervisors, co-workers, and the general public." (Id. at 20.) Callanan argues that the ALJ committed legal error by failing to properly apply the "treating physician rule," by selectively "picking and choosing" evidence in the administrative record, and by basing his decision on less than substantial evidence. (Pl.'s Mem. at 13-18.)

#### 1. Treating Physician Rule

A treating physician is defined as a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." Sokol v. Astrue, No. 04-CV-6631 (KMK) (LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (quoting Schisler v. Sullivan, 3 F.3d 563, 569 (2d Cir. 1993)) (internal quotation marks omitted). The treating physician rule requires an ALJ to give a treating physician's opinion "controlling weight" if "the issue(s) of the nature and severity

4

of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). "[A]n ALJ may not reject a treating physician's disability opinion based 'solely' on internal conflicts in that physician's clinical findings." Carvey v. Astrue, No. 09-cv-4438, 2010 WL 2264932, at *2 (2d Cir. June 7, 2010) (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998)). But where other medical opinions in the record contradict the treating physician's opinion, an ALJ need not give the treating physician's opinion controlling weight. Id.

If an ALJ does not give controlling weight to the treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the assessment. 20 C.F.R. § 404.1527(d)(2). Specifically, an ALJ must assess the length, nature, and extent of the treatment relationship; the "supportability" of the medical opinion; the consistency of the opinion with other evidence in the record; the treating physician's specialization, if any; and any other factors the claimant may bring to an ALJ's attention. 20 C.F.R. § 404.1527(d)(2)-(d)(6). While an ALJ need not recite each one of these factors by rote, it must be clear from her decision that "the ALJ applied the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). In any event, an ALJ must provide "good reasons" for the lack of weight given to the treating physician's opinion. Kennedy v. Astrue, 343 F. App'x 719, 722 (2d Cir. 2009). "A reasonable basis for doubt that the ALJ applied the correct legal standard in determining the weight to afford the treating physician can be grounds for remand." Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

Here, Callanan claims that the ALJ erred by failing to give controlling weight to the opinion of her treating psychiatrist, Dr. Gary Weinstein, that she was unable to work. (Pl.'s Mem. at 13-15.) Indeed, the ALJ explicitly rejected Dr. Weinstein's opinion because his conclusion that Callanan was unable to work was "not supported by the findings of the medical status examination and treatment progress notes which show that the claimant's condition was stable from conservative treatment with medication and therapy." (Tr. at 23.) In doing so, the ALJ detailed the length, nature, and extent of Dr. Weinstein's treatment relationship with Callanan over several years. (See id. at 21-23.) The ALJ also noted the lack of supportability for Dr. Weinstein's conclusion that Callanan was unable to work given his own examinations, which indicated that Callanan demonstrated "normal speech, and appropriate thought processes, judgment, insight, and impulse control [and that Callanan's] cognitive functioning was good as to orientation, recent and remote memory, knowledge, and cognitive ability." (Id. at 23.) The ALJ further noted the inconsistency of the conclusion that Callanan was unable to work given her Global Assessment of Functioning, or GAF,[1] score of 69, "indicative of some mild symptoms, but generally functioning pretty well." (Id.) The ALJ provided "good reasons" for rejecting Dr. Weinstein's opinion and, therefore, did not commit legal error in applying the treating physician rule.

2. Selective Assessment of Evidence

Callanan also argues that the ALJ committed legal error by improperly "picking and choosing" evidence from the administrative record in making his determination. (Pl.'s Mem. at 15-16.) To support this proposition, Callanan cites Fiorello v. Heckler, 725 F.2d 174, 176 (2d

---

[1] "GAF rates overall psychological functioning on a scale of 0-100 that takes into account psychological, social, and occupational functioning. A GAF in the range of 61 to 70 indicates '[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.'" Zabala v. Astrue, 595 F.3d 402, 405 n.1 (2d Cir. 2010) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 34 (4th ed. rev. 2000)).

Cir. 1983) as an example of "this forbidden 'pick and choose' approach." (Pl.'s Mem. at 16.) In Fiorello, however, the ALJ's opinion "was contrary to the reasoned conclusion of every doctor whose opinion was solicited." 725 F.2d at 176. There, the ALJ had rejected the opinions of six doctors, all of whom concluded that the claimant was completely disabled following a car accident. Id. The ALJ did not simply "pick and choose" *among* physicians' opinions – the ALJ selectively chose particular *sentences within* physicians' opinions to arrive at conclusions contrary to those stated in the opinions themselves. Id. This egregiously improper weighing of the evidence merited reversal of the Commissioner's decision. Id. Suffice it to say, this is not the circumstance present here. The ALJ properly "weigh[ed] the conflicting evidence in the record," Clark, 143 F.3d at 118 – almost all of which suggested Callanan possessed some capacity to work – to determine that Callanan possessed residual functional capacity to "perform light work" under step four. (Tr. at 20.) Therefore, the ALJ did not commit legal error in this regard.

3.  Substantial Evidence

Lastly, Callanan argues that the ALJ failed to base his decision on substantial evidence.[2] (See Pl.'s Mem. at 17.) "Substantial evidence" is simply "more than a mere scintilla . . . [that] a reasonable mind might accept as adequate to support a conclusion." Moran, 569 F.3d at 112. The hundreds of pages of doctor's reports considered by the ALJ, many of which concluded that Callanan was at least partially able to work, was certainly enough evidence that a reasonable mind might accept the conclusion that Callanan possessed the residual functional capacity to do

---

[2] Callanan specifically complains that "there is inadequate substantial evidence to support the ALJ's findings that Ms. Callanan can perform competitive work." (Pl.'s Mem. at 17.) This, however, is not the substantial evidence legal standard but a pastiche of three separate concepts: 1) that an ALJ must base his decision on substantial evidence, see Shaw, 221 F.3d at 131; 2) that "substantial evidence" is only enough "relevant evidence as a reasonable mind might accept as adequate," see Moran, 569 F.3d at 112; and 3) that "competitive work" is merely "the performance of substantial services with reasonable regularity," see DeRienzis v. Heckler, 748 F.2d 352, 353 (2d Cir. 1984). Because it is clear that Callanan wishes to challenge the sufficiency of the evidence used by the ALJ under step four, the court will address Callanan's arguments as such.

7

light work. To the degree that *some* of this evidence conflicted with that conclusion, the court can find no error in the ALJ's determination as "it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." See Clark, 143 F.3d at 118. Therefore, the ALJ based his decision on substantial evidence.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Judgment on the Pleadings is GRANTED, and Plaintiff's Cross-Motion is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
February 8, 2011

s/Nicholas Garaufis
NICHOLAS G. GARAUFIS
United States District Judge